UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER EMMANUEL RODRIGUEZ,<br><br>                  Plaintiff,<br><br>           v.<br><br>MAJOR LEAGUE BASEBALL,  OFFICE<br>OF THE COMMISSIONER OF MAJOR<br>LEAGUE BASEBALL and ALLAN HUBER<br>"BUD" SELIG,<br><br>               Defendants. | 13-CV-7097 (LGS) |

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF ALEXANDER RODRIGUEZ'S MOTION FOR REMAND

**Reed Smith LLP**
599 Lexington Avenue
New York, NY 10022
(212) 521-5400

-and-

**Tacopina Seigel & Turano, P.C.**
275 Madison Avenue
New York, NY 10016
(212) 227-8877

**Gordon & Rees LLP**
3455 Peachtree Road, Suite 1500
Atlanta, GA 30326
Office: (404) 869-9054

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 4

    A.  MLB Commences an Action in Florida State Court and Asserts That its Own State Law Tortious Interference Claims Are Not Preempted by the LMRA .......................................... 4

    B.  Mr. Rodriguez Commences an Action in New York State Court Asserting State Law Tortious Interference Claims ........................................................... 6

    C.  MLB Does an About Face and Removes Mr. Rodriguez's State Court Action Arguing That His Tortious Interference Claims are Preempted by the LMRA ................................... 8

ARGUMENT ............................................................................................................... 8

POINT I   DEFENDANTS BEAR THE BURDEN OF PROVING THAT REMOVAL IS APPROPRIATE ............................................................................. 8

POINT II  PLAINTIFF'S STATE LAW TORTIOUS INTERFERENCE CLAIMS ARE NOT SUBSTANTIALLY DEPENDENT UPON A CONSTRUCTION OF THE AGREEMENTS ............................................................................. 9

POINT III REMAND IS PROPER EVEN WHERE COMPLAINT ALLEGES FACTS THAT CAN SERVE AS THE BASIS OF A LABOR GRIEVANCE AND EVEN IF DEFENDANTS' DEFENSES WILL REQUIRE AN INTERPRETATION OF MLB'S AGREEMENTS ............................................................................. 14

POINT IV MLB IS ESTOPPED FROM TAKING POSITIONS CONTRARY TO THOSE IT TOOK BEFORE THE FLORIDA STATE COURT IN THE BIOGENESIS ACTION ............................................................................. 16

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

Page

**Cases**

*Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc.*,
   15 Misc. 3d 776 (Sup. Ct. N.Y. Cnty. 2007) ...................................................................11, 13

*Allis-Chalmers Corp. v. Lueck*,
   471 U.S. 202 (1985) .............................................................................................................9

*Anwar v. Fairfield Greenwich Ltd.*,
   676 F. Supp. 2d 285 (S.D.N.Y. 2009)..............................................................................8, 9

*Baldracchi v. Pratt & Whitney Aircraft Div.*,
   814 F.2d 102 (2d Cir. 1987)...........................................................................3, 9, 12, 15

*Bartlett v. Conn. Light & Power Co.*,
   309 F. Supp. 2d 239 (D. Conn. 2004) ...............................................................................13

*Bogan v. Gen. Motors Corp.*,
   500 F.3d 828 (8th Cir. 2007) ............................................................................................14

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987)........................................................................................................9, 15

*Connecticut Gen. Life Ins. Co. v. Houston Scheduling Servs.*,
   No. 3:12-cv-01456, 2013 WL 4647252  (D. Conn. Aug. 29, 2013).........................................17

*FDIC v. Tyco Int'l Ltd.*,
   422 F. Supp. 2d 357 (S.D.N.Y. 2006)..................................................................................8

*Ferrara v. Leticia, Inc.*,
   No. 09–CV–3032,2012 WL 4344164 (E.D.N.Y., Sept. 21, 2012) ............................13

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
   50 N.Y.2d 183 (1980) ...................................................................................................10, 11

*Intellivision v Microsoft Corp.*,
   484 Fed. Appx. 616 (2d Cir. 2012).....................................................................................16

*Kronos Inc. v. AVX Corp.*,
   81 N.Y.2d 90 (1993) ...........................................................................................................11

*Lewis v. Laborers Intn'l. Union of N. Am., AFL-CIO*,
   387 F. Supp. 2d 715 (W.D. Ky. 2005)................................................................................14

*Lia v. Saporito*,
   No. 12-4738, -- Fed. Appx. --, 2013 WL 5645562  (2d. Cir. Oct. 17, 2013) ............................17

*Lingle v. Norge Div. of Magic Chef, Inc.*,
    486 U.S. 399 (1988) ...................................................................................9, 11, 15

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ....................................................................................16

*Quarles v. Remington Arms, Co.*,
    848 F.Supp 328 (D. Conn. 1994) .................................................................13

*Sever v. Alaska Pulp Corp.*,
    978 F.2d 1529 (9th Cir. 1992) .....................................................................14

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .................................................................12, 13

*Stapleton Studios, LLC v. City of New York*,
    26 A.D.3d 236 (1st Dep't 2006) ............................................................10, 13

*Techno-TM v. Fireaway, Inc.*,
    928 F. Supp.2d 694 (S.D.N.Y. 2013) ...........................................................17

*World Wrestling Fed'n Entm't, Inc. v. Bozell*,
    142 F. Supp. 2d 514 (S.D.N.Y. 2001) ..........................................................10

*Youst v. Longo*,
    43 Cal.3d 64 (1987) .....................................................................................13

**Statutes**

29 U.S.C. § 185(a) ...............................................................................................9

## PRELIMINARY STATEMENT

On October 3, 2013, Alexander Rodriguez ("Mr. Rodriguez" or "Plaintiff") sued Major League Baseball ("MLB") and its commissioner, Bud Selig, in New York state court for tortiously interfering with his endorsement deals and other contracts by, *inter alia*, leaking false stories to the press about him, and by paying and intimidating individuals to provide false testimony and evidence concerning him.  Complaint, Oct. 3, 2013, ECF No. 11 at Ex. 1.  Rather than addressing these serious allegations head on, Defendants have improperly removed the suit to this Court, arguing that Mr. Rodriguez's state law tort claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA").  Very simply, Plaintiff's claims are not preempted, and therefore, this Court lacks subject matter jurisdiction over them, and they must be remanded back to state court.

The Complaint asserts two independent state law tortious inference claims, which federal courts have repeatedly held are precisely the type of state law claims that fall outside the scope of the LMRA.  This is no surprise to Defendants, as they themselves made arguments identical to those advanced by Plaintiff in this motion in a similar action *previously commenced by MLB in state court* in Florida.  There, MLB kept its claims in state court by arguing that its claim against the defendants for tortious interference with MLB's collective bargaining agreements with Major League Baseball Players Association ("MLBPA"), the union that represents all MLB players, did not require interpretation of those agreements, and therefore was not preempted.  In its briefs, MLB asserted that the LMRA only preempts claims substantially dependent upon, or substantially intertwined with, an interpretation of the Agreements (defined below) between MLB and its union.  Mr. Rodriguez's Complaint does not meet either of these criteria.

Instead, the Complaint alleges that Defendants used wrongful means to destroy Mr. Rodriguez's reputation and career, thereby tortiously interfering with his current and potential business relationships. This Court does not need to interpret the provisions of the Agreements to adjudicate any of the elements of Mr. Rodriguez's claims.

The mere fact the Complaint pleads facts that can also serve as the basis of a grievance under the Agreements is not a basis for LMRA preemption. Similarly, the LMRA does not preempt claims where the Agreements are only used as *a defense* to the state law claim. Here, the only possible relevance the Agreements may have to this litigation is to Defendants' potential defenses, and not to Mr. Rodriguez's affirmative case. Thus, Defendants cannot meet their burden of demonstrating that a valid basis of subject matter jurisdiction exists over this dispute.

As noted above, Defendants' argument that Mr. Rodriguez's tortious interference claims require interpretation of the Agreements, and therefore are preempted, contradicts the positions MLB repeatedly took before the Florida state court in the lawsuit it filed against Biogenesis of America, LLC ("Biogenesis"). In that suit, MLB sued the Miami clinic and related defendants – including, notably, its now cooperating witness Anthony Bosch – for tortiously interfering with MLB's agreements with MLBPA, by allegedly providing banned performance enhancing substances ("PES") to MLB ballplayers. Certain defendants in the Biogenesis matter, as well as certain third parties, moved to dismiss MLB's claims on the grounds that they were preempted by Section 301 of the LMRA. MLB opposed the motions, arguing to the Florida state court that its tortious interference claims did not require the court's interpretation of the Agreements – the very same Agreements allegedly at issue herein – because there was no dispute that the PES at issue were banned by the Agreements. MLB argued that the only questions for the court were whether the Florida defendants actually provided PES to ballplayers, and their motivation for

- 2 -

doing so.  The Florida state court agreed, finding that MLB's tortious interference claims were not preempted, and kept the claims in state court.

Here, MLB has taken a 180-degree turn, now arguing that Mr. Rodriguez's state law tortious interference claims – which are substantially similar to MLB's claims in the Biogenesis action – are somehow preempted.  However, MLB is judicially estopped from taking positions that are contradictory to those it took before the Florida state court.   Like MLB's claims in Florida, Mr. Rodriguez's claims here do not implicate the Agreements, and Mr. Rodriguez's claims are thus not preempted.

In sum, this action seeks to vindicate Mr. Rodriguez's state law right to conduct his business without Defendants' very public tortious interference, wholly outside the workplace, and outside the purview of the Agreements.  If Defendants' removal to this Court is upheld, it "would have the effect of granting *less* state law protection to employees governed by collective bargaining agreements than to other employees."  *Baldracchi v. Pratt & Whitney Aircraft Div.*, 814 F.2d 102, 107 (2d Cir. 1987) (emphasis added).  Such a result "turn[s] the policy that animated the [labor laws] on its head" by "penaliz[ing] workers who have chosen to join a union by preventing them from benefiting" from laws that protect other non-union employees.  *Id.*

Instead of hiding behind ill-conceived procedural motions, Defendants should respond to the substance of Mr. Rodriguez's allegations in their proper forum.  Plaintiff therefore respectfully requests that this Court remand this action back to New York State Supreme Court, where it rightfully belongs, so that Mr. Rodriguez can have his claims adjudicated without further delay.

## STATEMENT OF FACTS

In the summer of 2012, MLB began investigating Biogenesis, a clinic in Miami that allegedly provided PES to ballplayers. Compl. at ¶ 2. The investigation languished until January 2013, when the *Miami New Times*, a free weekly tabloid, published documents provided to it by a disgruntled former employee of Biogenesis, which identified a number of MLB players who purportedly obtained PES through the clinic, including Mr. Rodriguez. *Id.* at ¶ 32.

Throughout its investigation of Biogenesis and the MLB ballplayers allegedly connected to it, Defendants have engaged in a systematic effort to destroy Mr. Rodriguez's reputation, including by continually leaking false stories to the media about Mr. Rodriguez. *Id.* at ¶¶ 57-58, 67. Meanwhile, Defendants' "evidence" of his alleged misconduct was the product of paying and pressuring individuals to testify and produce documentary evidence against Mr. Rodriguez (which was also leaked to the press), without any regard for the veracity of the purchased evidence. *Id.* at ¶¶ 51, 53, 57.

### A. MLB Commences an Action in Florida State Court and Asserts That its Own State Law Tortious Interference Claims Are Not Preempted by the LMRA

On March 22, 2013, MLB filed suit in Florida state court against Biogenesis, Anthony Bosch, and a host of other defendants (the "Biogenesis Action"). *Id.* at ¶ 36. Like Mr. Rodriguez does in the instant action, MLB asserted state law tortious interference claims. Second Amended Complaint at ¶¶1, 30-49, *Office of the Comm'r of Baseball v. Biogenesis of America, LLC*, No. 13-10479 CA 20 (Fla. Cir. Ct. Aug. 5, 2013) ("Biogenesis Complaint"), Siev Decl.[1], Ex. 1. Specifically, MLB alleged that the defendants in the Biogenesis Action tortiously

---

[1] The Siev Decl. refers to the Declaration of Jordan W. Siev, dated Nov. 8, 2013, and filed herewith.

interfered with MLB's contract with MLBPA[2] by providing PES to professional ballplayers. *Id.* at ¶ 37.  However, it became readily apparent that the true purpose of MLB's lawsuit was to misuse the Florida court system to amass evidence against Mr. Rodriguez.  Compl. at ¶¶ 36-38.  Shortly after filing the suit, MLB began aggressively pursuing discovery, issuing dozens of subpoenas to parties and non-parties. *Id.* at ¶ 39.  MLB even went so far as to subpoena documents from Black, Srebnick, Kornspan & Stumpf, PA, Mr. Rodriguez's former attorneys, concerning their representation of him, in brazen disregard of his attorney-client privilege. *Id.* at ¶ 43.

The Biogenesis defendants and third parties moved to dismiss MLB's complaint on the grounds that the Florida court lacked jurisdiction over MLB's state-law tortious interference claims.  They argued that the LMRA preempted MLB's suit, because the court would be required to examine whether MLB's rights under the JDA were improperly impacted by Defendant's conduct.

In three separate motions,[3] and in direct contradiction of the positions taken by Defendants here, MLB argued that because there is no factual "dispute that the substances Defendants are alleged to have distributed to Players are prohibited based on the clear and

---

[2] Mr. Rodriguez is a baseball player for the New York Yankees, and is a member of MLBPA.  Compl. ¶¶ 15, 27.  MLBPA and MLB are parties to a collective bargaining agreement, the Basic Agreement ("BA"), which governs the terms and conditions of MLB players' employment. *See id.* at ¶ 27.  In addition, MLBPA entered into a Joint Drug Prevention and Treatment Program with MLB (the "JDA" and, with the BA, the "Agreements"), which seeks to deter the use of PES. *Id.* at ¶ 28.  And finally, Mr. Rodriguez and the New York Yankees are parties to the Uniform Players Contract ("UPC"), which governs Mr. Rodriguez's relationship with the Yankees. *Id.* at ¶ 76.

[3] *See* Plaintiff's Memorandum in Opposition to Non-Party Lazarro Collazo's Motion for Rehearing and Reconsideration of This Court's Order Dated June 24, 2013 ("Pl. Opp. to Collazo Mot.") at 7, *Office of the Comm'r of Baseball v. Biogenesis of America, LLC*, No. 13-10479 CA 20 (Fla. Cir. Ct. July 5, 2013), Siev Decl., Ex. 2; Plaintiff's Memorandum in Opposition to Non-Party Yuri Sucart's Motion for Protective Order at 3-4, *Office of the Comm'r of Baseball*, No. 13-10479 (Fla. Cir. Ct. June 25, 2013), Siev Decl. Ex. 3; Plaintiff's Memorandum of Law in Opposition to Defendants' and Non-Parties' Motions to Dismiss and Motions for Rehearing, Reconsideration and/or Protective Order ("Pl. Opp. to Mot. to Dismiss") at 5-6, *Office of the Comm'r of Baseball*, No. 13-10479 (Fla. Cir. Ct. July 22, 2013), Siev Decl., Ex. 4.

unambiguous terms of the Joint Drug Program, no interpretation [of the Agreements] within the meaning of Section 301 is required." Pl. Opp. to Collazo Mot. at 10, Siev Decl., Ex. 2.

On July 31, 2013, the Biogenesis court denied the motions to dismiss. In doing so, without engaging in any written analysis, the Florida state court agreed with MLB that state law tortious interference claims were not preempted by the LMRA and thus belonged where they were filed—in state court.[4]

### B. Mr. Rodriguez Commences an Action in New York State Court Asserting State Law Tortious Interference Claims

As a result of Defendants' tortious conduct, on October 3, 2013, Mr. Rodriguez sued MLB and Selig in New York State Supreme Court, asserting two state law claims arising from their tortious interference with his existing and prospective contracts.

The Complaint alleges that Defendants and their agents tortiously interfered with Mr. Rodriguez's business relationships by leaking false and disparaging stories to the press about the supposed evidence they had of Mr. Rodriguez's PES use, his alleged efforts to settle with MLB, and his supposed attempts to interfere with MLB's investigation. Compl. ¶¶ 57-67. These stories include:

- **April 12, 2013:** "Multiple baseball sources" told the *New York Daily News* that Mr. Rodriguez interfered with its investigation by purchasing Biogenesis documents. *Id.* at ¶ 58.

- **June 5th 2013:** The *New York Daily News* reported that "two baseball sources" told the newspaper that Mr. Rodriguez was considering a deal that would include a "100-game suspension." *Id.* at ¶ 57.

- **July 22, 2013:** "Sources familiar with the investigation" told ESPN that MLB had much more evidence connecting Mr. Rodriguez to Biogenesis than it had on Ryan Braun, another MLB player. *Id.*

---

[4] The Florida court's order is attached as Ex. 5 to the Siev Decl.

- **August 5, 2013:** The Associated Press reported details of the "confidential evidence" that MLB amassed against Mr. Rodriguez, including Blackberry messages, Facebook profiles and records of text messages. *Id.*

- **August 13, 2013:** *New York Daily News* columnist Bill Madden appeared on a popular sports talk-radio show to discuss Mr. Rodriguez's suspension. Throughout the interview, Mr. Madden made numerous false statements concerning Mr. Rodriguez, including that MLB had evidence that Mr. Rodriguez had been using PES "going back three or four years" and that MLB had sufficient evidence against Mr. Rodriguez to warrant a "lifetime ban." *Id.* at ¶ 60. Mr. Madden identified MLB as the source of his information. *Id.* at ¶ 61.

The Complaint further alleges that MLB applied wrongful means, including paying and pressuring witnesses to produce evidence and testify against Mr. Rodriguez, in an attempt to harass and embarrass him. *Id.* at ¶¶ 44, 53. Defendants' wrongful means (which are growing by the day) included, as of the date of filing of the Complaint:

- Intimidating the former University of Miami pitching coach, Lazaro Collazo, and his family, at his home in an effort to pressure him into providing information to MLB. *Id.* at ¶ 45.

- Offering cash payments to former Biogenesis employees for documents stolen from Biogenesis. *Id.* at ¶ 48.

- Promising Porter Fischer, a former Biogenesis employee, $1,000 per week for his cooperation with their investigation, and $125,000 for an affidavit attesting to the authenticity of documents allegedly taken from Biogenesis. *Id.* at ¶ 49.

- Threating Marcelo Albir, a former college ballplayer, that they would refer Mr. Albir's case to law enforcement if he did not cooperate with their investigation, and then threatening and harassing Albir's friends and neighbors. *Id.* at ¶ 53.

Mr. Rodriguez alleges that Defendants' misconduct interfered with his present and future business relationships, including potential sponsorship contracts with Nike and Toyota. Compl. ¶¶ 70-75. Defendants' actions also interfered with Mr. Rodriguez's ongoing business ventures, including his car dealership and construction company, as well as his contract with the Yankees. *Id.*

### C. MLB Does an About Face and Removes Mr. Rodriguez's State Court Action Arguing That His Tortious Interference Claims are Preempted by the LMRA

Defendants accepted service of the Complaint on October 7, 2013 and, on the same day,

filed a petition to remove Mr. Rodriguez's Complaint to this Court. Notice of Removal, Oct. 7,

2013, ECF No. 1 ("Removal Petition"). In the Removal Petition, Defendants assert two

arguments in support of federal subject matter jurisdiction. First, Defendants argue that Mr.

Rodriguez's claims are "inextricably intertwined" with baseball's collective bargaining

agreements. Removal Pet. at ¶ 10. As a result, Defendants claim that the Court would be

required to interpret the Agreements in order to adjudicate Mr. Rodriguez's claims. *Id.* Second,

Defendants argue that Mr. Rodriguez's claims are based on rights created by the Agreements,

and not rights that are "based on any independent duty owed to every person in society." *Id.*

As set forth fully below, Defendants' arguments run contrary to well-established U.S.

Supreme Court, Second Circuit and other case law, and are directly at odds with the positions

they took before the Florida state court in the Biogenesis Action. Therefore, Mr. Rodriguez's

state law tortious interference claims should be remanded back to New York state court.

### ARGUMENT

### POINT I

### DEFENDANTS BEAR THE BURDEN OF PROVING THAT REMOVAL IS APPROPRIATE

The party seeking removal bears the burden of "establishing to a 'reasonable probability'

that removal is proper." *Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285, 292 (S.D.N.Y.

2009). This presumption exists in order to preserve the limited jurisdiction of federal courts and

to maintain "the independence of state courts." *FDIC v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357,

367–68 (S.D.N.Y. 2006). As a result, "any doubts regarding the propriety of removal are

resolved in favor of remand, and 'federal courts construe the removal statute narrowly.'" *Anwar*, 676 F. Supp. 2d at 292.  Defendants' removal petition does not satisfy this difficult burden.

**POINT II**

**PLAINTIFF'S STATE LAW TORTIOUS
INTERFERENCE CLAIMS ARE NOT SUBSTANTIALLY
DEPENDENT UPON A CONSTRUCTION OF THE AGREEMENTS**

Defendants' removal petition is premised on the theory that all of Mr. Rodriguez's state-law claims are preempted by Section 301 of the LMRA, which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees … may be brought in any district court of the United States." 29 U.S.C. 185(a).  However, as MLB conceded in its Biogenesis briefs, the LMRA only preempts state-law claims that are "substantially dependent upon analysis of the terms of a [collective bargaining] agreement ("CBA") made between the parties in a labor contract."[5]  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *Baldracchi*, 814 F.2d at 104.  Notably, where "resolution of the state-law claim does not require construing the collective-bargaining agreement" or only tangentially involves a provision of the CBA, the state law claim is not preempted.  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988); *Baldracchi*, 814 F.2d at 106.  Finally, a defendant's reliance on the CBA as a defense to a state law claim does not result in Section 301 preemption. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987).

Despite their earlier proclamations to the court in Miami, Defendants now argue that Mr. Rodriguez's similar tortious interference claims are "inextricably intertwined" with the Agreements, and require their interpretation.  Removal Pet. at ¶ 10.  They further argue that the causes of action seek to vindicate rights that are created by the Agreements, and "are not based

---

[5] *See* Pl. Opp. to Collazo Mot., at 7, Siev Decl., Ex. 2; Pl. Opp. to Mot. to Dismiss, at 5-6, Siev Decl., Ex. 4.

on any independent duty owed to every person in society." *Id.*  Defendants are wrong on both counts.  Mr. Rodriguez's tortious interference claims are based on rights created by New York common law, not the Agreements.  As a result, no interpretation of the Agreements is necessary to determine the validity of Mr. Rodriguez's claims.

The Complaint's first cause of action alleges that Defendants used wrongful means to tortiously interfere with Mr. Rodriguez's business relationships including his future endorsement deals.  For example, the Complaint alleges that Defendants leaked false information to Bill Madden, a *New York Daily News* columnist, who subsequently compared Mr. Rodriguez to Whitey Bulger, a convicted murderer and mob figure.  Compl. at ¶ 61; *accord id.* at ¶¶ 57-67.  Such conduct can serve as the basis of a tortious interference claim.  *See World Wrestling Fed'n Entm't, Inc. v. Bozell,* 142 F. Supp. 2d 514, 531-32 (S.D.N.Y. 2001) (denying motion to dismiss state law tortious interference claims for defamatory statements made about the plaintiff); *Stapleton Studios, LLC v. City of New York*, 26 A.D.3d 236, 237 (1st Dep't 2006) (negative statements made to the press about plaintiff can serve as the basis of a tortious interference claim).

The Complaint similarly alleges that Defendants employed wrongful means, including paying and intimidating witnesses to provide false testimony against Mr. Rodriguez.  Compl. ¶¶ 45-56, 83.  This too, can serve as the basis for a tortious interference claim.  *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980) (tortious interference claims can be brought where plaintiff alleges that defendant used "wrongful means" which includes "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions.").

The second cause of action alleges that Defendants knowingly interfered with Mr. Rodriguez's contract with the New York Yankees – and specifically, with his performance bonuses – through the same conduct. *Id. at* ¶¶ 88-94.

The elements for tortious interference with prospective business relations in New York is "(a) business relations with a third party; (b) the defendant's interference with those business relations; (c) the defendant acting with the sole purpose of harming the plaintiff or using wrongful means; and (d) injury to the business relationship." *Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc.*, 15 Misc. 3d 776, 779 (Sup. Ct. N.Y. Cnty. 2007) (citing *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (1990)). The elements for tortious interference with existing contracts are: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff." *Kronos Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993).

The elements of these claims are not intertwined with, nor do they require any interpretation of, the Agreements. The first element, the existence of a contract or business relationship with a third party, does not require an interpretation of the Agreements. The second and third elements — which focus on Defendants' inteference with Mr. Rodriguez's business relationships or knowledge of his contract, and their actions in committing the tortious conduct — can similarly be established independent of the Agreements. *Lingle*, 486 U.S. at 07 (holding that the defendant's motive is a "purely factual inquiry" that "does not turn on the meaning of any provision of a collective-bargaining agreement"); *Stapleton Studios, LLC*, 26 A.D.3d at 237 (holding negative statements made to the press can constitute tortious conduct). At most, Defendants may argue that their tortious conduct was sanctioned by the Agreements, but as we

explain in Point III, *infra,* such an argument is insufficient for LMRA preemption because the LMRA does not preempt claims where the sole use of the CBA is as a defense to the violations of state law.

Finally, even if Defendants argue that this Court must review Mr. Rodriguez's contract with the New York Yankees to determine the extent to which he has been damaged as a result of Defendants' conduct, "[d]etermination of the extent of damages is not the sort of 'substantial dependence' on the labor agreement that mandates Section 301 preemption." *Baldracchi*, 814 F.2d at 106. Therefore, whether Mr. Rodriguez's contracts and business relationships were harmed by Defendants' tortious conduct, and the degree of that harm, can be established without substantially interpreting the Agreements. Indeed, to hold otherwise would run afoul of the Second Circuit's directive that courts should avoid "penaliz[ing] workers who have chosen to join a union by preventing them from benefiting" from laws that protect other non-union employees. *Baldracchi*, 814 F.2d at 107.

Thus, in a nearly identical case, the Ninth Circuit held that similar tortious interference claims brought by Latrell Sprewell, a professional basketball player, were not preempted by the LMRA. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 990-91 (9th Cir. 2001). Sprewell sued the NBA for, among other things, tortiously interfering with his business relationships, such as by leaking negative stories to the media during its discipline of Sprewell, which itself was the subject of a grievance under the NBA's CBA. *Id.* The NBA moved to dismiss the claims, stating they were preempted by the LMRA, but the Ninth Circuit rejected this argument because Sprewell's claims did not require interpretation of the NBA collective bargaining agreements. *Id.* The court wrote:

> [Defendants] labor under the mistaken assumption that their statements to the
> media can only be deemed "wrongful" for purposes of Sprewell's interference

claims if such communications are prohibited by the CBA . . . The conduct of the NBA and the Warriors alleged by Sprewell to have interfered with his economic relationships—i.e., the instigation of a media campaign designed to portray Sprewell "in a false and negative light"—clearly falls within this definition. Accordingly, the alleged actions of [Defendants], if proven true, would qualify as "wrongful conduct" under California law independent of the rights and responsibilities set forth in the CBA. *Id.* at 991.[6]

Like the plaintiff in *Sprewell*, Mr. Rodriguez's claims are based on Defendants' continuous leaking of disparaging information to the media about him which interfered with his business relationships. Compl. ¶¶ 57-67.

Another factually analogous case is *Quarles v. Remington Arms, Co.*, where plaintiff sued his union representatives for tortiously interfering with his employment contract by filing false job reports about him. 848 F. Supp. 328, 329-3301 (D. Conn. 1994). The court held that these claims were not preempted by the LMRA because "the claim of tortious interference does not substantially depend upon an analysis of the collective bargaining agreement. The claim is directed, not to the terms of the collective bargaining agreement, but to the conduct of a union steward who filed negative complaints concerning plaintiff's job performance." *Id.* at 332. Here too, Mr. Rodriguez claims that Defendants have used wrongful means – making false statements about him and paying others to do the same – to interfere with his employment and other contracts. Such a claim does not require an interpretation of the Agreements, and is therefore not preempted. *See Ferrara v. Leticia, Inc.*, No. 09–CV–3032, 2012 WL 4344164 at *7 (E.D.N.Y., Sept. 21, 2012) (employer's claims against union for tortious interference with current and future contracts, on the basis of the union's alleged disparate treatment of the employer, was not

---

[6] The elements of tortious interference with prospective business relationships are the same in California and New York. *Compare Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc.*, 15 Misc.3d 776, 779 (Sup. Ct. N.Y. County 2007) *with Youst v. Longo*, 43 Cal.3d 64, 71, n. 6 (1987). Further, "wrongful means" in California includes the same conduct as it does under New York law. *Compare Sprewell*, 266 F.3d at 991 (stating "wrongful means" includes leaking false and negative stories to media about Plaintiff) *with Stapleton Studios*, 26 A.D.3d at 237 (slanderous statements to the press may serve as the basis for a tortious interference claim).

preempted by the LMRA); *Bartlett v. Conn. Light & Power Co.*, 309 F. Supp. 2d 239, 244-47 (D. Conn. 2004) (LMRA did not preempt employee's suit against employer which alleged, *inter alia*, that employer verbally threatened and abused him, had him followed by a private detective, and made false accusations about him, despite the fact that the underlying facts in employee's claim were similar to those addressed in the union grievance procedure because employer's substantive legal obligations derived from state law, and not the CBA); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1532-33, 1540-01 (9th Cir. 1992) (former employee's tortious interference claims against timber company for allegedly blacklisting him and interfering with his actual and prospective employment solely because he had given testimony unfavorable to company were not preempted by National Labor Relations Act); *Bogan v. Gen. Motors Corp.,* 500 F.3d 828, 829, 833 (8th Cir. 2007) (suit by employee against employer and private security firm for falsely accusing employee of selling drugs at workplace was not preempted by the LMRA because the claim was not dependent upon analysis of the CBA); *Lewis v. Laborers Intn'l. Union of N. Am., AFL-CIO,* 387 F. Supp. 2d 715, 716 (W.D. Ky. 2005) (holding that plaintiff's tortious interference claims were not preempted by Section 301 because they "would exist independent of any contractual relationship between [the employer] and Defendant").

Mr. Rodriguez's right to conduct his business affairs without MLB's tortious interference derives from state common law, and not baseball's collective bargaining agreements, and therefore, his claims belong in state court, and should be remanded accordingly.

## POINT III

### REMAND IS PROPER EVEN WHERE COMPLAINT ALLEGES FACTS THAT CAN SERVE AS THE BASIS OF A LABOR GRIEVANCE AND EVEN IF DEFENDANTS' DEFENSES WILL REQUIRE AN INTERPRETATION OF MLB'S AGREEMENTS

Defendants' removal petition mistakenly assumes that Mr. Rodriguez's claims are preempted simply because they allege facts that could also give rise to a grievance under the

- 14 -

Agreements.  Removal Pet. at ¶¶ 9-10.  This argument has been roundly rejected by the Supreme Court in *Lingle*, where the Court wrote: "[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, *would require addressing precisely the same set of facts*, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes."  486 U.S. at 410 (emphasis supplied).

Defendants would be similarly wrong in assuming that Mr. Rodriguez's claims are preempted because Defendants will need to construe the CBA in order to defend against the tortious interference claims – for example, by implausibly arguing that the Agreements sanctioned their tortious behavior.  This too would not be grounds for LMRA preemption because, as the Supreme Court held in *Caterpillar*, Section 301 does not preempt claims where the defendants rely on the collective bargaining agreement as a defense to the state law claim.  482 U.S. at 398-99 (1987); *see also Baldracchi*, 814 F.2d at 105 (state law suit for retaliatory discharge was not preempted by Section 301 because claims were "independent of the collective bargaining agreement" and did "not turn on interpretation of that agreement;" defendant's argument that it would need to construe CBA in order to demonstrate its defense that it discharged plaintiff "for cause" was deemed insufficient to preempt state law claim).

Thus, even though Mr. Rodriguez's Complaint alleges facts that are also the grounds for a grievance proceeding against Defendants, and Defendants may need to interpret the Agreements in order to defend against these claims, as a matter of law, remand is proper.

## POINT IV

## MLB IS ESTOPPED FROM TAKING POSITIONS CONTRARY TO THOSE IT TOOK BEFORE THE FLORIDA STATE COURT IN THE BIOGENESIS ACTION

Finally, Defendants' preemption arguments must be rejected because they are inconsistent with the positions they asserted before the Florida state court in the Biogenesis Action, and Defendants are thus estopped from arguing to the contrary.

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . " *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Courts have employed this doctrine of judicial estoppel to prevent "parties from deliberately changing positions according to the exigencies of the moment," thereby protecting the integrity of the judicial process." *Id.* at 750. The Second Circuit examines three factors when determining whether a party should be judicially estopped from asserting an argument: "(1) that a party's new position is 'clearly inconsistent' with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party 'would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Intellivision v Microsoft Corp.*, 484 Fed. Appx. 616, 619 (2d Cir. 2012). Defendants' preemption arguments meet this standard.

First, Defendants' position that Mr. Rodriguez's tortious interference claims require interpretation of the Agreements, and are therefore preempted, is clearly inconsistent with their position in the Biogenesis Action, where MLB argued that its tortious interference claims did not require interpretation of the agreement, and were not preempted. *Supra* at 5, n. 3. The Florida state court ruled in MLB's favor by finding that its claims were not preempted, satisfying the second prong. *Supra* at 6, n. 4. Finally, Mr. Rodriguez will be unfairly prejudiced if MLB is not

estopped from taking these inconsistent positions because this action could be found to be properly removed to this Court, and then potentially dismissed under the LMRA.

Defendants cannot have it both ways, and this Court should hold that Defendants are judicially estopped from asserting these contradictory and self-serving positions. *See Lia v. Saporito*, No. 12-4738, -- Fed. Appx. --, 2013 WL 5645562 at *2-3 (2d Cir. Oct. 17, 2013) (judicial estoppel barred plaintiff from asserting a claim of majority ownership in a company when he had previously denied ownership in an unrelated proceeding involving a different defendant); *Techno-TM v. Fireaway, Inc.*, 928 F. Supp. 2d 694, 696, 698-99 (S.D.N.Y. 2013) (doctrine of judicial estoppel prevented party from challenging federal subject matter jurisdiction on the basis of domicile, as they had previously stated in an action against a different party they were domiciliaries of Washington state); *Connecticut Gen. Life Ins. Co. v. Houston Scheduling Servs.*, No. 3:12-cv-01456, 2013 WL 4647252 at *4-*6 (D. Conn. Aug. 29, 2013) (plaintiff was judicially estopped from arguing that arbitration provision was narrow after plaintiff's affiliated company successfully argued in a previous case against a different party that the disputed language was broad). Having been judicially estopped from arguing to the contrary, Defendants' removal petition was improper, and remand is appropriate.

## CONCLUSION

Defendants' attempt to avoid addressing Mr. Rodriguez's substantive allegations through ill-conceived procedural tactics should not be countenanced by this Court. Mr. Rodriguez's tortious interference claims do not substantially rely upon, or require a substantial interpretation of, baseball's collective bargaining agreements, and thus do not belong in this Court. Plaintiff therefore respectfully requests that this action be remanded to state court.

Dated:   November 8, 2013
        New York, New York

**REED SMITH LLP**

By: _____
Jordan W. Siev, Esq.
James C. McCarroll, Esq.
Casey D. Laffey, Esq.
599 Lexington Avenue
New York, New York 10022
Tel: (212) 521-5400
Fax: (212) 521-5450

-and-

**TACOPINA SEIGEL & TURANO, P.C.**
By: Joseph Tacopina, Esq.
275 Madison Avenue
New York, New York 10016
Tel: (212) 227-8877

-and-

**GORDON & REES LLP**
By: Wm. David Cornwell, Sr., Esq.
3455 Peachtree Road, Suite 1500
Atlanta, GA 30326
Tel. (404) 869-9054

*Attorneys for Plaintiff*
*Alexander Emmanuel Rodriguez*