# EXHIBIT I

the evaluation of the Player's treating professional; and (c) the Player's willingness to consider other treatment options such as in-patient therapy.

4. Players who fail to cooperate with their Initial Evaluations or comply with their Treatment Programs will be subject to immediate discipline as set forth in Section 7.C of the Program.

### D. Salary Retention

A Player shall be entitled to salary retention, over the course of his career, for the first thirty (30) days he is required under a Treatment Program to be in inpatient or outpatient treatment necessitating his absence from the Club. A Player shall be entitled to one-half salary retention, over the course of his career, for the 31st through 60th days he is required, under a Treatment Program, to be in inpatient treatment, or outpatient treatment necessitating his absence from the Club. A Player shall not be entitled to salary retention, over the course of his career, for any period beyond the 60th day in the event he is required, under a Treatment Program or otherwise, to be in inpatient treatment or outpatient treatment necessitating his absence from the Club.

## 5. CONFIDENTIALITY

The confidentiality of Player information is essential to the Program's success. To best ensure that confidentiality is protected in all aspects of the Program's operation, the Parties agree to the following confidentiality provisions:

A. Except as provided in Section 6 below, the Commissioner's Office, the Players Association, the Treatment Board, the IPA, the Medical Testing Officer, Club personnel, and all of their members, affiliates, agents, consultants and employees, are prohibited from publicly disclosing information about an individual Player's test results or testing history, Initial Evaluation, diagnosis, Treatment Program prognosis or compliance with a Treatment Program. Notwithstanding the foregoing, nothing in this Section 5 or in Section 6 below prohibits the IPA from issuing the reports contemplated by Section 1.A.2(g) above or the Commissioner's Office or the Players Association from providing a summary of the results of tests conducted pursuant to the Program (including the number of tests conducted and the number of positives broken down by Prohibited Substance) to a Congressional committee (or other legislative body with appropriate jurisdiction) requesting such information pursuant to a subpoena or other investigative effort, provided that the annual report or the summary provided by one or more of the Parties does not disclose the name(s) (or other identifying characteristics) of any particular Player(s).

B. Testing records shall be maintained in accordance with the procedures set forth in the Document Retention section of the Program's Collection Procedures and Testing Protocols.

C. For purposes of this Section 5, a "governmental investigation" shall mean any subpoena issued, warrant obtained, or other investigative effort employed by any

19

governmental body (including a court acting at the request of a private party) with the intention of securing information relating to the drug test results of a particular Player or particular Players (as opposed to the summary information referenced in Section 5.A above).  Notwithstanding the foregoing, any such subpoena, warrant or other effort to secure information (i) that is supported by individualized probable cause regarding a particular Player or Players, and (ii) in which the evidence supporting such cause did not arise from the operation of the Program, and (iii) in which the information requested or obtained relates only to that particular Player or those particular Players shall not be considered a "governmental investigation" within the meaning of this Section 5.  Moreover, a subpoena issued by a court at the request of a private party shall not be considered a "governmental investigation" unless a court has issued an order requiring compliance with the subpoena or otherwise requiring the disclosure of the drug test results of a particular Player or particular Players.

D.     Either Party shall notify the other upon learning of a governmental investigation.  Both Parties shall resist any governmental investigation by all reasonable and appropriate means including, when necessary, initiation and prosecution of legal proceedings.  In addition, the Parties will also use all reasonable means to resist any effort by a private party to obtain confidential information about the testing program through civil litigation, including, but not limited to, the filing of a motion to quash in the appropriate court.  The Parties shall divide equally the costs incurred in connection with such efforts to resist and shall confer as to other aspects of their efforts.

E.     Unless the Parties agree otherwise, all testing pursuant to Sections 3.A.1 and 3.A.2 above shall be suspended immediately upon the Parties' learning of a governmental investigation.  Such a suspension will remain in effect until the governmental investigation is withdrawn, or until the Parties have successfully resisted the governmental investigation at the trial court level, or until the Parties otherwise agree to resume testing.  If the Parties have successfully resisted an investigation at the trial court level, and that decision thereafter is set aside by an appellate court, all testing pursuant to Section 3.A.1 and 3.A.2 shall again be suspended.  If a suspension is in place for 12 months consecutively, either Party may reopen the Program by providing notice within twenty (20) days thereafter.  The Program will remain in effect for thirty (30) days after such notice to reopen is provided.

6.     **DISCLOSURE OF PLAYER INFORMATION**

   A.     **Disclosure of Information**

1.     The Commissioner's Office shall notify a Club's General Manager when a Player is placed on a Treatment Program.  A Club whose Player is on a Treatment Program is prohibited from disclosing any information regarding a Player's Treatment Program, his progress thereunder, and any discipline imposed upon the Player by the Commissioner's Office to the public, the media or other Clubs.  Notwithstanding this prohibition, a Club is permitted to discuss a Player's Treatment Program progress with another Club that is

interested in acquiring such Player's contract if the Club receives the Player's prior written consent to release his Treatment Program history.

2.      Any and all information relating to a Player's involvement in the Program, including, but not limited to, the fact or the results of any Prohibited Substance testing to which the Player may be subject, and any discipline imposed upon the Player by the Commissioner's Office shall remain strictly confidential.  Notwithstanding the foregoing, if the Player is suspended by the Commissioner's Office, pursuant to Section 7 below, the suspension shall be entered in the Electronic Baseball Information System as a suspension for a specified number of days for a violation of the Program, and the only public statement from the Commissioner's Office shall be that the Player was suspended for a specified number of days for a violation of the Program.  If the Player has tested positive for a Prohibited Substance, the specific substance and the category of Prohibited Substance (e.g., Performance Enhancing Substance or Stimulant) for which he tested positive may also be disclosed by the Commissioner's Office.  If the Player's suspension is for a violation of Section 3.F.2 or 3.F.3, the Commissioner's Office may so disclose.  A Player's Club may issue a public statement in response to a Player's suspension provided that a draft of the statement is sent to the Players Association at least 60 minutes prior to its issuance, and the Club considers in good faith any comments provided by the Players Association.

In addition, other than in the case of a first positive test for a Stimulant, the Commissioner's Office may, without a Player's consent, disclose the Player's status under the Program, including a Player's likely availability to his Club, and/or the reason for any discipline imposed on the Player to the General Manager of the Player's Club, who shall keep such information confidential, except that the General Manager, and only he, may disclose such information to the General Manager of a Club that has expressed an interest in acquiring such Player's contract via assignment, and that General Manager also shall keep such information confidential.

3.      Decisions of the Arbitration Panel, and the record of proceedings before the Panel in matters arising under the Program, shall not be disclosed by the Parties, other than to their respective constituents (and with instructions that prohibit further disclosure), unless the Parties agree or the Panel directs otherwise. (See also Section 8.C below.)

4.      Notwithstanding anything to the contrary in the Program, either Party may disclose publicly details of a Player's test results, testing history and/or the Player's challenge to discipline imposed pursuant to Section 7 below to the extent necessary to respond to any inaccurate or misleading claims by that Player that could undermine the integrity and/or credibility of the Program.

21

    B.    **Method of Providing Information**

Any information authorized to be provided to General Managers pursuant to this Section 6 shall be provided by the Commissioner's Office with the Players Association's prior agreement or, if the Parties agree, by the IPA.

7.    **DISCIPLINE**

    A.    **Performance Enhancing Substance Violations**

A Player who tests positive for a Performance Enhancing Substance, or otherwise violates the Program through the use or possession of a Performance Enhancing Substance, will be subject to the discipline set forth below.

1.    First violation: 50-game suspension;

2.    Second violation: 100-game suspension; and

3.    Third violation: Permanent suspension from Major League and Minor League Baseball; provided, however, that a Player so suspended may apply, no earlier than one year following the imposition of the suspension, to the Commissioner for discretionary reinstatement after a minimum period of two (2) years.  The Commissioner shall hear any such reinstatement application within thirty (30) days of its filing and shall issue his determination within thirty (30) days of the closing of the application hearing.  A Player may challenge the Commissioner's determination on such application under the Grievance Procedure set forth in Article XI of the Basic Agreement and any such challenge may include a claim that a suspension beyond two (2) years would not be for just cause; provided, however, that the Arbitration Panel shall have no authority to reduce any suspension imposed pursuant to this Section 7.A.3 to a period of less than two (2) years.

    B.    **Stimulant Violations**

A Player who tests positive for a Stimulant, or otherwise violates the Program through the use or possession of a Stimulant, will be subject to the discipline set forth below.

1.    First violation: Follow-up testing pursuant to Section 3.D.2 above;

2.    Second violation: 25-game suspension;

3.    Third violation: 80-game suspension; and

4.    Fourth and subsequent violation: Suspension for just cause by the Commissioner, up to permanent suspension from Major League and Minor League Baseball, which penalty shall be subject to challenge before the Arbitration Panel.

### C. Failure to Comply with an Initial Evaluation or a Treatment Program

A Player who is determined by the Treatment Board to have not complied with an Initial Evaluation or a Treatment Program for a Drug of Abuse (other than Marijuana, Hashish and Synthetic THC) will be subject to the discipline set forth in this Section 7.C. If the Treatment Board determines that a Player refused to submit to an Initial Evaluation, or refused to participate in mandatory sessions with his assigned health professional, the Player will be subject to discipline for just cause by the Commissioner without regard to the progressive discipline schedule set forth below. For all other violations, the Player will be subject to the following discipline schedule:

1. First failure to comply: At least a 15-game but not more than a 25-game suspension;

2. Second failure to comply: At least a 25-game but not more than a 50-game suspension;

3. Third failure to comply: At least a 50-game but not more than a 75-game suspension;

4. Fourth failure to comply: At least a one-year suspension; and

5. Any subsequent failure to comply by a Player shall result in the Commissioner imposing further discipline on the Player. The level of the discipline will be determined consistent with the concept of progressive discipline.

### D. Marijuana, Hashish and Synthetic THC Violations

A Player on a Treatment Program for the use or possession of Marijuana, Hashish or Synthetic THC shall not be subject to suspension. A Player on a Treatment Program for Marijuana, Hashish or Synthetic THC who is determined by the Treatment Board to not have complied with his Treatment Program shall be subject to fines, which shall be progressive and which shall not exceed $35,000 for any particular violation. Notwithstanding the foregoing, if the Treatment Board concludes that a Player has demonstrated flagrant disregard for his Treatment Program, either by refusing to submit to an Initial Evaluation or by failing to comply with a Treatment Program, or if the Commissioner determines that the Player's use of Marijuana, Hashish or Synthetic THC represents a threat to the safety of other Players, the Player shall be subjected to discipline for just cause by the Commissioner without regard to the limitations on discipline contained in this Section 7.D. In addition, any Player who participates in the sale or distribution (as those terms are used in the criminal code) of Marijuana, Hashish or Synthetic THC will be subject to the discipline set forth in Section 7.F below.

E. **Conviction for the Use or Possession of a Prohibited Substance**

A Player who is convicted or pleads guilty (including a plea of *nolo contendere* or similar plea but not including an adjournment contemplating dismissal or a similar disposition) to the possession or use of any Prohibited Substance (including a criminal charge of conspiracy or attempt to possess or use) shall be subject to the following discipline:

1. First offense: At least a 60-game but not more than an 80-game suspension, if the Prohibited Substance is a Performance Enhancing Substance, or at least a 25-game but not more than a 50-game suspension, if the Prohibited Substance is a Stimulant or a Drug of Abuse;

2. Second offense: At least a 120-game but not more than a one-year suspension, if the Prohibited Substance is a Performance Enhancing Substance, or at least a 50-game but not more than a 100-game suspension, if the Prohibited Substance is a Stimulant or a Drug of Abuse;

3. Third offense involving a Performance Enhancing Substance: Permanent suspension from Major League and Minor League Baseball; provided, however, that a Player so suspended may apply, no earlier than one year following the imposition of the suspension, to the Commissioner for discretionary reinstatement after a minimum period of two (2) years.  The Commissioner shall hear any such reinstatement application within thirty (30) days of its filing and shall issue his determination within thirty (30) days of the closing of the application hearing.  A Player may challenge the Commissioner's determination on such application under the Grievance Procedure set forth in Article XI of the Basic Agreement and any such challenge may include a claim that a suspension beyond two (2) years would not be for just cause; provided, however, that the Arbitration Panel shall have no authority to reduce any suspension imposed pursuant to this Section 7.E.3 to a period of less than two (2) years; and

4. If the Prohibited Substance is a Stimulant or a Drug of Abuse, a third offense shall result in a one-year suspension, and any subsequent offense shall result in a suspension for just cause by the Commissioner, up to permanent suspension from Major League and Minor League Baseball, which penalty shall be subject to challenge before the Arbitration Panel.

F. **Participation in the Sale or Distribution of a Prohibited Substance**

A Player who participates in the sale or distribution of a Prohibited Substance shall be subject to the following discipline:

1. First offense: At least an 80-game but not more than a 100-game suspension, if the Prohibited Substance is a Performance Enhancing Substance, or at least a 60-game but not more than a 90-game suspension, if the Prohibited Substance is a Stimulant or a Drug of Abuse;

24

2. Second offense involving a Performance Enhancing Substance: Permanent suspension from Major League and Minor League Baseball; provided, however, that a Player so suspended may apply, no earlier than one year following the imposition of the suspension, to the Commissioner for discretionary reinstatement after a minimum period of two (2) years. The Commissioner shall hear any such reinstatement application within thirty (30) days of its filing and shall issue his determination within thirty (30) days of the closing of the application hearing. A Player may challenge the Commissioner's determination on such application under the Grievance Procedure set forth in Article XI of the Basic Agreement and any such challenge may include a claim that a suspension beyond two (2) years would not be for just cause; provided, however, that the Arbitration Panel shall have no authority to reduce any suspension imposed pursuant to this Section 7.F.2 to a period of less than two (2) years; and

3. If the Prohibited Substance is a Stimulant or a Drug of Abuse, a second offense shall result in a two-year suspension, and any subsequent offense shall result in disciplinary action for just cause by the Commissioner, up to permanent suspension from Major League and Minor League Baseball, which penalty shall be subject to challenge before the Arbitration Panel.

**G.     Other Violations**

1. For purposes of the penalties in Sections 7.A and 7.B above, a positive test result reported prior to the first 2006 spring training voluntary reporting date shall not be considered in determining the number of times that a Player has tested positive under the Program.

2. A Player may be subjected to disciplinary action for just cause by the Commissioner for any Player violation of Section 2 above not referenced in Section 7.A through 7.F above.

**H.     Suspensions**

1. For purposes of this Section 7, a "game" shall include all championship season games and post-season games in which the Player would have been eligible to play, but shall not include spring training games, extended spring training games or affiliated Winter League games. For a Player whose contract has been assigned to the Minor Leagues, or who is signed to a Minor League contract, a "game" shall include all Minor League regular season games for which he would have been eligible to play. A Player is ineligible to be elected or selected to the All-Star Game (and will not receive any benefits connected with such an election or selection) if he is suspended for violating the Program at any time during the off-season, spring training or the championship season prior to the All-Star Game. A Player shall be deemed to have been eligible for a post-season game if he was on the Club's active roster (as that term is used in Article XV(E)(1) of the Basic Agreement) immediately preceding his suspension; a Player on a Club's Disabled List immediately preceding his suspension shall be deemed to have been eligible for a post-season game if it is reasonable to conclude that he would have been eligible but for his

25

suspension. A Player whose suspension begins during (or extends into) the off-season shall begin (or resume) serving his suspension with the next "game" for which he otherwise would have been eligible to play.

2.      All suspensions imposed pursuant to this Section 7 shall be without pay. The number of days of pay a Player shall lose while suspended shall equal the number of games (excluding post-season games) for which he is suspended, regardless of the number of days that he is on the Restricted List as a result of the suspension. In addition, a Player whose suspension includes a majority of his Club's post-season games and who, by operation of Major League Rule 45(b)(3), would be entitled to a full share of the Players' Pool created pursuant to Article X of the Basic Agreement, shall have his share reduced by the proportion of his Club's regular season games he missed due to the suspension. During the term of his suspension, a Player may consent to an assignment to a Minor League affiliate of his Club under the terms of Article XIX(C)(1) and (3) of the Basic Agreement, except as modified above with respect to salary and except that such assignment shall not exceed five (5) days (eight (8) days for pitchers) for a Player suspended for a period of 25 games or less, and shall not exceed ten (10) days (16 days for pitchers) for a Player suspended for a period of between 26 and 50 games.

**I.      Placement on and Reinstatement from Restricted List**

A Player shall be placed on the Restricted List during the term of any suspension imposed under this Section 7. A Player suspended under this Section 7 shall receive Major League Service while suspended during any period he would have received such service but for his placement on the Restricted List as a result of violating the Program. Notwithstanding anything to the contrary in Major League Rule 16(a), a Player suspended under this Section 7 shall be reinstated from the Restricted List immediately at the conclusion of the specified period of ineligibility.

**J.      Completion of Minor League Discipline**

A Player suspended under Major League Baseball's Minor League Drug Prevention and Treatment Program (the "Minor League Program") who is selected to or otherwise placed on a 40-man roster before such suspension is complete shall be suspended at the Major League level for the lesser of: (a) the remainder of the suspension imposed under the Minor League Program or (b) the difference between the maximum penalty that could have been imposed under this Program (had each of the Player's violations occurred while he was on a 40-man roster) and the number of games already served by the Player at the Minor League level. A Player who tests positive under the Minor League Program, or who has otherwise violated the Minor League Program, and who is not notified of that positive test result or of the violation until after his promotion to a 40-man roster shall be treated as if the Player tested positive under or violated this Program. Notwithstanding the preceding sentence, in any such challenge to a positive test result or violation that occurred under the Minor League Program, the terms of the Minor League Program (including, but not limited to, its Collection Procedures and Testing Protocols) shall govern, except with respect to the level of discipline imposed and

26

the Player's appeal rights, which shall be governed by Sections 5, 6, 7 and 8 of this Program. Except as provided in this Section 7.J, a violation of the Minor League Program shall not be considered as a violation of this Program for any purpose under this Section 7.

K.  **Multiple Substances**

1.  If a single specimen is positive (within the meaning of Section 3.F.1) for more than one category of Prohibited Substances (Performance Enhancing Substance, Stimulant and/or a Drug of Abuse), the Player shall serve the longer applicable suspension only, and the Commissioner's Office will disclose, pursuant to Section 6.A.2 above, the specific substance and the category of Prohibited Substance which resulted in the suspension of that length. However, for purposes of determining the appropriate level of discipline for future positive and non-analytical positive test results, the Player shall be treated as if he was disciplined for each positive test result separately.

2.  A Player who violates Section 3.F.2 shall be considered to have tested positive for the category of Prohibited Substance that, given his testing history, will result in the longest suspension. A violation of Section 3.F.2 shall be considered a prior offense only if the Player subsequently tests positive for, or is otherwise determined to have used or possessed, that category of Prohibited Substance.

3.  A Player who violates Section 3.F.3 shall be considered to have tested positive for the category of Prohibited Substance that, given his testing history, will result in the longest suspension. Such a violation shall be considered a prior offense only if the Player subsequently tests positive for, or is otherwise determined to have used or possessed, that category of Prohibited Substance. Notwithstanding the preceding sentence, if the Player can demonstrate by clear and convincing evidence that his conduct was not related to the category of Prohibited Substance for which he was considered to have tested positive, he shall be considered to have tested positive for the category of Prohibited Substance for the use of which he was attempting to avoid detection. Such a violation shall be considered a prior offense only if the Player subsequently tests positive for, or is otherwise determined to have used or possessed, the category of Prohibited Substance for the use of which the Player was attempting to avoid detection. If a Player demonstrates that he was attempting to avoid detection of a Stimulant, and he has never previously tested positive for a Stimulant, he shall be suspended for 25 games, but he shall be considered to have only one prior offense should he subsequently test positive for, or is otherwise determined to have used or possessed, a Stimulant.

L.  **Notice of Violation**

If the notification requirements of Section 3.G are satisfied, a Player will not be disciplined for a second or subsequent violation involving a Prohibited Substance that occurred prior to the time that the Player received actual notice of his first positive test result or non-analytical positive for the same Prohibited Substance, provided that the Player's discipline for his first violation was not overturned or rescinded.

### M. Exclusive Discipline

All authority to discipline Players for violations of the Program shall repose with the Commissioner's Office.  No Club may take any disciplinary or adverse action against a Player (including, but not limited to, a fine, suspension, or any adverse action pursuant to a Uniform Player's Contract) because of a Player's violation of the Program.  Nothing in this Section 7.M is intended to address whether: (i) a Club may take adverse action in response to a Player's failure to render his services due to a disability resulting directly from a physical injury or mental condition arising from his violation of the Program; or (ii) a Club may withhold salary from a Player for any period he is unavailable because of legal proceedings or incarceration arising from his violation of the Program.

## 8. APPEALS

### A. Arbitration Panel Review

The Arbitration Panel shall have jurisdiction to review any determination that a Player has violated the Program, or any determination made pursuant to Section 3.I (Therapeutic Use Exemption).  Any dispute regarding the level of discipline within the ranges set forth in Section 7 is also subject to review by the Arbitration Panel and any such review shall include whether the level of discipline imposed was supported by just cause; provided, however, that the Arbitration Panel shall have no authority to reduce the discipline imposed by the Commissioner's Office below the stated minimum level established for the specific violation as set forth in Section 7.

### B. Challenges to a Positive Test Result

1. **The Burden of Proving the Violation:**  In any case involving an alleged violation of Section 3.F.1, the Commissioner's Office shall have the burden of establishing that a Player's test result was "positive" (as that term is defined therein), and that the test result was obtained pursuant to a test authorized under the Program and was conducted in accordance with the Collection Procedures and Testing Protocols of the Program and the protocols of the Montreal Laboratory (herein collectively "the Collection Procedures").  The Commissioner's Office is not required to otherwise establish intent, fault, negligence or knowing use of a Prohibited Substance on the Player's part.  The Commissioner's Office may establish that a test result was "positive" by introducing the Certificate of Analysis provided by the Medical Testing Officer, and by demonstrating that the test result was for a Prohibited Substance as defined in Section 2 of the Program at the level required by the Testing Protocols.  The Commissioner's Office may rely solely on the information contained in the litigation package described in Section 8.C.1(a) to demonstrate that the test was conducted in accordance with the Collection Procedures, including, without limitation, that the chain of custody of the specimen was maintained.

In addition, in any case involving a positive test result for hGH, the Commissioner's Office shall have the burden of establishing the presence of hGH in the

28

Player's blood specimen.  As part of meeting that burden, the Commissioner's Office shall be required to establish the accuracy and reliability of the blood test administered to the Player.  The Players Association and the Player may present any evidence in response, and the Parties' agreement to allow the test to be conducted shall be irrelevant to the Arbitration Panel's determination as to whether the Commissioner's Office has met that burden.  The Commissioner's Office is not required to otherwise establish intent, fault, negligence, or knowing use of hGH on the Player's part to establish a violation.

2.     **Challenges to the Proof of the Violation:**  The Player may challenge the initial showing by the Commissioner's Office that the result was "positive" or that it was obtained pursuant to a test authorized under the Program and was conducted in accordance with the Collection Procedures.

If the Player alleges a deviation from the Collection Procedures, the Commissioner's Office will carry its burden (a) by demonstrating that there was no deviation; (b) by demonstrating that the deviation was authorized by the parties or by the IPA in an individual case (provided that the IPA acted within the authority delegated to him under the Program); or (c) by demonstrating that the deviation did not affect the accuracy or reliability of the test result.

3.     **Affirmative Defense:**  A Player is not in violation of the Program if the presence of the Prohibited Substance in his test result was not due to his fault or negligence.  The Player has the burden of establishing this defense.  A Player cannot satisfy his burden by merely denying that he intentionally used a Prohibited Substance; the Player must provide objective evidence in support of his denial.  Among other things, such objective evidence may question the accuracy or reliability of the "positive" test result.

C.     **Procedures for Appeal of a Positive Test Result for a Performance Enhancing Substance or a Second and Subsequent Positive Test Result for a Stimulant**

The following procedures shall apply when the Medical Testing Officer reports to the IPA a test result for a Player that may be a positive test result for a Performance Enhancing Substance or a second or subsequent positive test result for a Stimulant.  All information associated with or generated by these procedures is subject to the confidentiality protections of Sections 5 and 6 above.  Unless expressly authorized by the Program or the Panel Chair, neither the IPA, the Commissioner's Office nor a Club may disclose any information obtained in connection with these procedures (other than to individuals within or retained by the Commissioner's Office directly involved in the processing of a challenge to a positive test result or to potential fact witnesses in the case).

1.     As required by Section 3.G above, the IPA shall immediately provide notice to the Parties of a reported positive test result, including a copy of the Certificate of Analysis provided by the Medical Testing Officer.  The Players Association shall then

29

notify the Player of the reported result within the time parameters set forth in Section 3.G.

   (a)   After having provided notice to the Parties, the IPA shall provide to the parties as soon as practical but in any event at least one day before the "B" specimen test is conducted, the documentation package prepared by the Medical Testing Officer for the "A" specimen.  The IPA also shall direct the Medical Testing Officer to make arrangements for a "B" specimen test, which may be observed by a representative of the Player, the Players Association and/or the Commissioner's Office.  Absent extraordinary circumstances, such test shall be completed within seven (7) days.  The IPA shall provide to the Parties as soon as practical the documentation package prepared by the Medical Testing Officer for the "B" specimen. (The documentation packages for the "A" and "B" specimens collectively will be referred to as the "litigation package.")

   (b)   If a Player wishes to invoke Section 3.H above ("Multiple Discipline for the Same Use"), he shall make application to the IPA within three (3) business days of being notified of the positive test result.  The IPA shall then refer the matter to the Medical Testing Officer, consistent with Sections 1.E and 3.H.  The Medical Testing Officer shall forward his or her opinion to the IPA.  The IPA shall forward such opinion to the Parties as part of the litigation package.

   (c)   If a dispute arises regarding the application of Section 3.I above ("Therapeutic Use Exemption") in connection with a positive test result, information regarding that dispute shall be gathered and distributed to the Parties as part of the litigation package.

2.   The Parties shall confer regarding the reported positive test result within three (3) business days following the day of their receipt of all of the information called for in Section 8.C.1 above.  The Parties' discussions shall be considered confidential and not admissible in any Grievance challenging the reported test result.  If the Parties agree that the result is not a positive test result within the meaning the Program, notice thereof shall be provided to the Player.

3.   Unless such notice is provided to the Player, the Commissioner's Office, by 5:00 P.M. ET of the next business day following the day the Parties completed the conference described in Section 8.C.2 above, shall notify the Player and the Players Association of the discipline imposed for the reported test result.  Any suspension imposed shall be effective on the third business day after the discipline has been issued.  If the Player or the Players Association grieves the suspension before the effective date, the Player's suspension shall be stayed until the Arbitration Panel issues its Award; provided, however, that a Player who previously had a suspension stayed pursuant to this Section 8.C.3 (or its predecessors in the 2005 and 2008 Programs) or Section 8.D.1 (or its predecessor in the 2008 Program) shall not be entitled to a second stay unless his prior suspension was overturned or rescinded.

4.   Any such Grievance shall be deemed automatically appealed to the Arbitration Panel. The Parties nonetheless shall conduct a Step 2 meeting prior to the hearing. The Panel shall convene a hearing as soon as practicable and, absent good cause shown, no later than ten (10) days after the Grievance was filed. The hearing shall be conducted under the Rules of Procedure, but the Panel Chair shall have the authority to employ such procedures as he or she deems appropriate given the Parties' mutual desire for expedition. The Panel Chair, in employing such procedures, shall make all reasonable efforts to close the record at such time so as to permit an Award to issue within twenty-five (25) days following the opening of the hearing. The Panel shall issue its written opinion within thirty (30) days of issuing its Award.

5.   If the Panel sustains a suspension, the Club and the Player shall be notified and the Player shall begin serving his suspension immediately. If the Panel determines that no discipline is appropriate, all aspects of the proceedings shall remain confidential.

6.   A Player may challenge a positive test result at any time on the basis of newly discovered scientific evidence that questions the accuracy or reliability of the result. Such a challenge may be brought even if the result previously has been upheld by the Arbitration Panel. Should such a challenge be upheld, the Panel, in fashioning a make-whole remedy consistent with Article XII (A) of the Basic Agreement, may consider management sources other than the Player's Club at the time the suspension is served and, notwithstanding Article XII (A) (3) of the Basic Agreement, shall determine, under the particular circumstances, whether and to what extent an Award of Interest is appropriate.

**D.   Appeal of Discipline Issued Pursuant To Section 7.G.2**

The following procedures shall apply when the Commissioner, pursuant to Section 7.G.2 of the Program, disciplines a Player for a first-time violation of the Program involving a Performance Enhancing Substance and a second-time violation of the Program involving a Stimulant. All information associated with or generated by these procedures is subject to the confidentiality protections of Sections 5 and 6 above. Unless expressly authorized by the Program or the Panel Chair, neither the IPA, the Commissioner's Office nor a Club may disclose any information obtained in connection with these procedures (other than to individuals within or retained by the Commissioner's Office who are potential fact witnesses in the case). The Commissioner's Office may publicly announce the discipline of a Player if the allegations relating to a Player's violation of the Program previously had been made public through a source other than the Commissioner's Office or a Club (or their respective employees and agents). In addition, the Commissioner's Office or a Club can publicly disclose information relating to the discipline to respond to inaccurate or misleading public claims by the Player or his representatives that could undermine the integrity or credibility of the Basic Agreement, the Major League Rules, the Program, or any other agreement between the Parties.

1.   Any discipline imposed on a Player pursuant to Section 7.G.2 for a first time violation involving a Performance Enhancing Substance or a second time violation

31

involving a Stimulant shall be effective on the third business day after the discipline has issued.  If the Player or the Association grieves the discipline before the effective date, the Player's discipline shall be stayed until the Arbitration Panel issues its Award; provided, however, that a Player who previously had discipline stayed pursuant to Section 8.C.3 (or its predecessors in the 2005 or 2008 Programs) or this Section 8.D.1 (or its predecessor under the 2008 Program) shall not be entitled to a second stay unless his prior suspension was overturned or rescinded.

2.      Any such Grievance shall be deemed automatically appealed to the Arbitration Panel.  The Parties nonetheless shall conduct a Step 2 meeting prior to the hearing.  The Panel shall convene a hearing as soon as practicable and, absent good cause shown, no later than twenty (20) days after the Grievance was filed.  The hearing shall be conducted under the Rules of Procedure, but the Panel Chair shall have the authority to employ such procedures as he or she deems appropriate given the Parties' mutual desire for expedition.  The Panel Chair, in employing such procedures, shall make all reasonable efforts to close the record at such time so as to permit an Award to issue within twenty-five (25) days following the opening of the hearing.  The Panel shall issue its written opinion within thirty (30) days of issuance of its Award.

3.      If the Panel sustains a suspension, the Club and the Player shall be notified and the Player shall begin serving his suspension immediately.  If the Panel determines that no discipline is appropriate, all aspects of the proceedings shall remain confidential to the extent required by this Section 8.D.

### E.      Other Appeals

In any case involving an alleged violation of Section 3.F.2 or 3.F.3, or any determination made by the Medical Testing Officer under Section 3.H or the IPA under Section 3.I, the Panel's review of the IPA's or Medical Testing Officer's determination shall be *de novo*.  Neither Party shall have the burden of proof with respect to whether the determination of the Medical Testing Office or the IPA, as the case may be, should be affirmed by the Panel.