# EXHIBIT J

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL CIVIL DIVISION

CASE NO.: 13-10479 CA 20

THE OFFICE OF THE COMMISSIONER
OF BASEBALL,

      Plaintiff,

v.

BIOGENESIS OF AMERICA, LLC,
a Florida Limited Liability Company,
BIOKEM, LLC, a Florida Limited Liability
Company, ANTHONY P. BOSCH, an
individual, CARLOS ACEVEDO, an individual,
RICARDO J. MARTINEZ, an individual, and
JUAN CARLOS NUNEZ, an individual,

      Defendants.
_____/

**JURY TRIAL DEMANDED**

## SECOND AMENDED COMPLAINT

Plaintiff, the Office of the Commissioner of Baseball d/b/a Major League Baseball ("Plaintiff" or "MLB"), sues the Defendants, BioGenesis of America, LLC, a Florida Limited Liability Company ("BioGenesis"); Biokem, LLC, a Florida Limited Liability Company ("Biokem"); Anthony P. Bosch ("Bosch"); Carlos Acevedo ("Acevedo"); Ricardo J. Martinez ("Martinez"); and Juan Carlos Nunez ("Nunez") (collectively, "Defendants"), and in support thereof states:

CASE NO.: 13-10479 CA 20

## NATURE OF ACTION

1.     MLB brings this action to recover damages and for such other relief, including equitable relief, for the injury caused and being caused by Defendants' intentional and unjustified tortious interference with contracts between MLB and the Major League Baseball Players Association (the "Players Association"), which is the collective bargaining representative of all Major League Baseball Players ("Major League Players").

## PARTIES, JURISDICTION AND VENUE

2.     MLB is an unincorporated association whose members are the 30 Major League Baseball Clubs and is authorized to act in this matter.  MLB is headquartered at 245 Park Avenue, New York, New York, 10167.

3.     Defendant BioGenesis is a Florida Limited Liability Company which, upon information and belief, had its principal place of business at 1390 S. Dixie Highway, Suite #1101, Coral Gables, Florida 33146.

4.     Defendant Biokem is a Florida Limited Liability Company which, upon information and belief, had its principal place of business at 1390 S. Dixie Highway, Suite #1101, Coral Gables, Florida 33146.  Biokem was administratively dissolved on September 28, 2012 for failure to file an annual report.

5.     Defendant Bosch is an individual who, upon information and belief, resides in Miami-Dade County, Florida.

6.     Defendant Acevedo is an individual who, upon information and belief, resides in Miami-Dade County, Florida.

7.     Defendant Martinez is an individual who, upon information and belief, resides in Miami-Dade County, Florida.

2

CASE NO.: 13-10479 CA 20

8. Defendant Nunez is an individual who, upon information and belief, resides in Broward County, Florida.

9. This is an action for damages in excess of $15,000.00, exclusive of interest, attorneys' fees and costs and for such other relief, including equitable relief, necessary to remedy the damage caused and being caused by Defendants' unlawful conduct.

10. Venue is proper in this Court because (i) pursuant to § 47.051, Fla. Stat., both BioGenesis and Biokem, upon information and belief, at all relevant times had offices for transaction of their customary business in Miami-Dade County, Florida; (ii) pursuant to §§ 47.011 and 47.021, Fla. Stat., Defendants Bosch, Acevedo, and Martinez, upon information and belief, reside in Miami-Dade County, Florida; and (iii) pursuant to § 47.021, Fla. Stat., MLB's cause of action accrued in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

**A.  The Agreed-Upon Drug Prevention and Treatment Programs Between MLB and the Players Association.**

11. MLB has aggressively sought to eliminate the use of performance enhancing substances ("PES") by Major League Players.

12. The principal purposes of MLB's efforts to eliminate the use of PES have been to preserve and enhance the integrity of the game and the image of baseball, and to protect the health and well-being of Major League Players. These efforts have been memorialized in a number of collectively bargained agreements with the Players Association that have provided for a series of Joint Drug Prevention and Treatment Programs. Among other things, these collectively bargained agreements between MLB and the Players Association have prohibited the use of PES and other substances by Major League Players, prescribed procedures for testing for

3

CASE NO.: 13-10479 CA 20

PES and other prohibited substances, and provided for the discipline of players who violate the terms of the Programs.

13. The first such collectively bargained Joint Drug Prevention and Treatment Program between MLB and the Players Association became effective in or about 2003, and since then has been amended several times by agreement between MLB and the Players Association.

14. In recognition of the serious threat that PES and other prohibited substances pose to the health and safety of Major League Players, and to the integrity and commercial success of Major League Baseball, each successive agreement between MLB and the Players Association amending the Joint Drug Prevention and Treatment Program has expanded the list of prohibited substances, contained more rigorous testing procedures, and provided for increased penalties.

15. In connection with the negotiation of a new collective bargaining agreement between the 30 Major League Clubs and the Players Association in 2011, MLB and the Players Association agreed to an updated Joint Drug Prevention and Treatment Program, the effective date of which was December 12, 2011 (the "2011 Drug Prevention Program"). (A copy of the 2011 Drug Prevention Program is attached as Exhibit A.)

16. The 2011 Drug Prevention Program amended the Drug Prevention Program that had been in effect since May 2008 (the "2008 Drug Prevention Program"). (A copy of the 2008 Drug Prevention Program is attached as Exhibit B.)

17. The 2008 Drug Prevention Program, 2011 Drug Prevention Program and all of the amendments thereto (hereinafter collectively, "MLB's Joint Drug Prevention and Treatment Program") cover or covered, <u>inter alia</u>, all players on each Major League Club's 40-man roster. (<u>See</u> Exhibit A, at p. 1; Exhibit B, at p. 1)

CASE NO.: 13-10479 CA 20

18.     Among other things, MLB's Joint Drug Prevention and Treatment Program was designed to: (i) set forth the terms and provisions of the agreements reached by MLB and the Players Association that prohibited Major League Players from using or possessing certain substances, including PES; (ii) educate Major League Players on the risks associated with the use of PES and other prohibited substances; and (iii) deter and end the use of PES and other prohibited substances by Major League Players.  (See Exhibit A, at p. 1; Exhibit B, at p. 1.)

19.     MLB's Joint Drug Prevention and Treatment Program defines prohibited substances to include drugs of abuse, PES and certain stimulants, and prohibits the use or possession of such substances by Major League Players.  (See Exhibit A, at pp. 1, 8-11; Exhibit B, at pp. 1, 5-8.)

20.     Pursuant to MLB's Joint Drug Prevention and Treatment Program, MLB and the Players Association have agreed, inter alia, that Major League Players are not permitted to use or possess PES.  More specifically, MLB's Joint Drug Prevention and Treatment Program provides, in pertinent part:

> PROHIBITED SUBSTANCES
>
> All Players shall be prohibited from using, possessing, selling, facilitating the sale of, distributing, or facilitating the distribution of any Drug of Abuse, Performance Enhancing Substance and/or Stimulant (collectively referred to as "Prohibited Substances").

(Exhibit A, at p. 8; Exhibit B, at 5.)

**B.     The Defendants.**

21.     Upon information and belief, each of the Defendants participated in a scheme to solicit Major League Players to purchase or obtain, and/or to sell, supply or otherwise make available to Major League Players, substances that the Defendants knew were prohibited under MLB's Joint Drug Prevention and Treatment Program.

5

CASE NO.: 13-10479 CA 20

22.     According to its Facebook page[1], BioGenesis described itself as a weight loss and hormone replacement therapy clinic.  (See Exhibit C.)  Upon information and belief, BioGenesis was owned and/or operated at all relevant times by Defendants Martinez, Bosch, and others.

23.     Upon information and belief, Biokem was the predecessor to BioGenesis—operating in the same location, with many of the same employees, and with the same basic business model as BioGenesis.  According to the Articles of Organization for Biokem (attached as Exhibit D), Defendant Acevedo was the Managing Member of Biokem.  According to its Twitter account (@biokemmiami), Biokem was a health and wellness clinic "with certified doctors."  (A printout of the @biokemmiami Twitter page is attached as Exhibit E.)

24.     Upon information and belief, a second Twitter account activated for Biokem (@biokemllc) was used to follow the official Twitter account of Major League Baseball.  The @biokemllc Twitter page contains the image of a business card that references the biokemmiami.com website address and, upon information and belief, the biokemmiami.com website address was registered to Acevedo on or about January 3, 2011.  (An enlarged image of the business card is attached as Exhibit F, and the biokemmiami.com registry data is attached as Exhibit G.)

25.     Upon information and belief, in his role as Program Director at Biokem, BioGenesis, and related entities, Defendant Bosch, who is not a medical doctor, provided Major League Players with PES, including Testosterone, Human Growth Hormone, and Human Chorionic Gonadotropin, which he claimed would increase their strength and/or help them recover from injury if used by the players in the dosages and at the frequencies prescribed by

---

[1] BioGenesis's Facebook page has been taken down and is no longer publicly available.  Exhibit C is a cached version of the BioGenesis Facebook page that was available on January 30, 2013.

him. Upon information and belief, in some instances, Defendant Bosch visited players at their places of residence and/or hotel rooms to personally administer PES to them.

26.     Upon information and belief, Defendant Martinez was a Managing Member, Chief Executive Officer, Chief Financial Officer and President at BioGenesis and Biokem (see Exhibit C and Exhibit H.); was responsible for overseeing the financial and administrative functions of those entities; and actively participated in a scheme with Defendants Bosch, and Acevedo to solicit or induce Major League Players to purchase or obtain PES, or to sell, supply or otherwise make available PES to Major League Players for their use or possession in violation of MLB's Joint Drug Prevention and Treatment Program.

27.     Upon information and belief, Defendant Acevedo was the Managing Member of Biokem, and was responsible for many of its day-to-day operations, including providing instructions regarding the use of substances, including PES, provided to Biokem clients; and Acevedo actively participated in a scheme with Defendants Bosch and Martinez to solicit or induce Major League Players to purchase or obtain PES, or to sell, supply or otherwise make available PES to Major League Players for their use or possession in violation of MLB's Joint Drug Prevention and Treatment Program.

28.     Upon information and belief, Defendant Nunez was employed by or provided services to Athletes' Careers Enhanced and Secured Inc. ("ACES"), a sports agency that represents Major League Players, and Defendant Nunez solicited, sold, supplied or otherwise made available to Major League Players PES for their use or possession that he obtained from one or more of the Defendants in violation of MLB's Joint Drug Prevention and Treatment Program.

CASE NO.: 13-10479 CA 20

**C.    The Documents Published By the Miami New Times.**

29.    In January and February of 2013, the *Miami New Times*, a free Miami-area newspaper, published what it claimed were excerpts from handwritten records maintained by Defendant Bosch while he was affiliated with Biokem and/or BioGenesis, which the *Miami New Times* stated it had received from a confidential source.  (Attached, as Exhibit K, is a compilation of excerpts published by the *Miami New Times* on its website, miaminewtimes.com.)  Other media outlets, including Yahoo! Sports and ESPN.com, have published additional records purportedly maintained by Bosch.  Upon information and belief, the excerpts published by the *Miami New Times* and others—which reflect Defendants' sales of PES to Major League Players—are authentic business records, and come from personal notebooks and records maintained by Bosch while he was affiliated with Biokem and/or BioGenesis.

**D.    Defendants' Intentional and Unjustified Interference with MLB's Joint Drug Prevention and Treatment Program.**

30.    Upon information and belief, in or about 2009, Bosch sold, supplied and/or otherwise made available or helped to make available, for use or possession by Manny Ramirez, a Major League Player then playing for the Los Angeles Dodgers, Human Chorionic Gonadotropin, a prohibited PES under MLB's Joint Drug Prevention and Treatment Program.  MLB and the Players Association agreed that Ramirez would be suspended for a violation of the Joint Drug Prevention and Treatment Program.  Upon information and belief, at least by the time of MLB's 50-game suspension of Ramirez for his violation of MLB's Joint Drug Prevention and Treatment Program, which resulted in significant media attention throughout the country, including the Miami area, all Defendants were on notice that the use or possession of PES by Major League Players violated MLB's Joint Drug Prevention and Treatment Program.

8

CASE NO.: 13-10479 CA 20

31.     Upon information and belief, Defendants solicited Major League Players to purchase or obtain PES, and sold, supplied and/or otherwise made available PES to certain Major League Players, including one or more of the Major League Players referred to in articles published by the *Miami New Times*, copies of which are attached as Exhibit L, Exhibit M, Exhibit N and Exhibit O.  Upon information and belief, the "Juan" referred to in Exhibit L at p. 8 is Defendant Juan Carlos Nunez.

32.     Upon information and belief, at the times Defendants solicited Major League Players to purchase or obtain PES, and sold, supplied and/or otherwise made available PES to Major League Players, Defendants were aware that such players were prohibited from using or possessing such substances under MLB's Joint Drug Prevention and Treatment Program.

33.     Upon information and belief, Defendants induced Major League Players to purchase or obtain PES by, among other things, representing to them that, if used properly, the PES Defendants provided to them would not result in a positive test under MLB's Joint Drug Prevention and Treatment Program.

34.     Upon information and belief, because Defendants understood that Major League Players were contractually prohibited under MLB's Joint Drug Prevention and Treatment Program from using or possessing PES, Defendants often attempted to conceal the identities of the Major League Players they solicited to purchase or obtain and/or to whom they sold, supplied and/or otherwise made available PES by not using their real or full names on packaging containing the PES intended for such Players and in documents referring to such Players.

35.     Upon information and belief, by soliciting Major League Players to purchase or obtain PES, and/or by selling, supplying and/or otherwise making available PES to Major League Players, Defendants enabled such Players to possess and/or use PES and thus knowingly

9

CASE NO.: 13-10479 CA 20

and intentionally caused and/or induced such Players to breach their contractual obligations under MLB's Joint Drug Prevention and Treatment Program not to possess or use PES.

36.     In at least three separate instances within the last year that involved the suspension of Major League Players who are alleged to have received PES from one or more of the Defendants, MLB and the Players Association have agreed that the use or possession of PES by a Major League Player constituted a breach of the Joint Drug Prevention and Treatment Program. Specifically, when Major League Players Melky Cabrera, Bartolo Colon and Yasmani Grandal were suspended for having used or possessed PES, each such Player acknowledged that he had breached the agreement, the Players Association did not challenge the discipline imposed on such Players before an arbitrator because there was no dispute between MLB and the Players Association that the agreement had been breached, and the collectively-bargained dispute resolution procedure was thus exhausted.

37.     Upon information and belief, by soliciting Major League Players to purchase or obtain PES and/or by, selling, supplying and/or otherwise making available PES to Major League Players, Defendants intentionally and unjustifiably interfered with MLB's Joint Drug Prevention and Treatment Program.

38.     Upon information and belief, by providing dosing instructions to Major League Players that were designed to prevent MLB from detecting the use of PES by those Major League Players, Defendants intentionally and unjustifiably interfered with MLB's Joint Drug Prevention and Treatment Program.

CASE NO.: 13-10479 CA 20

E. **Injury Caused by Defendants' Intentional and Unjustified Interference.**

39. Due to Defendants' actions, MLB has suffered damages, including the costs of investigation, loss of goodwill, loss of revenue and profits and injury to its reputation, image, strategic advantage and fan relationships.

40. Accordingly, MLB brings this action against Defendants for monetary damages and other relief resulting from Defendants' tortious interference with MLB's contractual relationships.

41. All conditions precedent to the filing of this action have occurred, been waived or performed.

42. Due to the unlawful actions of Defendants, MLB has been forced to retain the undersigned law firms to protect its interests in this matter and is required to pay a reasonable fee for their services.

**TORTIOUS INTERFERENCE WITH CONTRACT - DAMAGES**

43. MLB repeats and realleges the allegations contained in paragraphs 1 through 45 above as though fully set forth herein.

44. Upon information and belief, through publicly available sources and otherwise, Defendants, at all times relevant hereto, knew of the existence of MLB's Joint Drug Prevention and Treatment Program and were aware that Major League Players were prohibited from using or possessing PES.

45. Upon information and belief, Defendants nevertheless knowingly and intentionally solicited Major League Players to purchase or obtain PES and sold, supplied and/or otherwise made available PES to Major League Players.

CASE NO.: 13-10479 CA 20

46. Upon information and belief, by soliciting Major League Players to purchase or obtain PES and by selling, supplying and/or otherwise making available PES to Major League Players, Defendants knowingly, intentionally and maliciously interfered with MLB's Joint Drug Prevention and Treatment Program, enabled such Players to possess and/or use PES and thus caused and/or induced such Players to breach their contractual obligations under MLB's Joint Drug Prevention and Treatment Program.

47. Upon information and belief, by providing Major League Players with dosing instructions designed to prevent MLB from detecting the use of PES by those Major League Players, Defendants knowingly, intentionally and maliciously interfered with MLB's Joint Drug Prevention and Treatment Program, enabled such Players to use PES and thus caused and induced such Players to breach MLB's Joint Drug Prevention and Treatment Program.

48. Upon information and belief, Defendants' interference was intentional because they knew of the contractual prohibition against the Major League Players' use or possession of PES, knew they were interfering with that contractual prohibition, and knew that such interference was substantially certain to occur as a result of their soliciting Major League Players to purchase or obtain PES and by their selling, supplying and/or otherwise making available PES to Major League Players.

49. Defendants acted without justification or privilege in so interfering with MLB's contractual relationship with the Players Association.

MLB has suffered and will continue to suffer substantial damages caused by Defendants' interference with MLB's Joint Drug Prevention and Treatment Program, including but not limited to damages based on costs of investigation, loss of goodwill, loss of revenue and profits and injury to its reputation, image, strategic advantage and fan relationships.

12

CASE NO.: 13-10479 CA 20

WHEREFORE, Plaintiff, the Office of the Commissioner of Baseball, respectfully requests that this Court enter judgment in favor of the Office of the Commissioner of Baseball and against Defendants, jointly and severally, (i) for damages, interest, attorneys' fees and costs, and (ii) for such other and further relief, including equitable relief, to remedy the interference caused by Defendants' unlawful conduct, as the Court deems just and proper.

Dated this 5th day of August, 2013.

| | |
|---|---|
| **PROSKAUER ROSE LLP** | **KOBRE & KIM LLP** |
| *Attorneys for Plaintiff* | *Attorneys for Plaintiff* |
| Eleven Times Square | 2 South Biscayne Boulevard |
| (Eighth Avenue & 41st Street) | 35th Floor |
| New York, NY  10036-8299 | Miami, Florida 33131 |
| Tel: (212) 969-3000 | Tel:  (305) 967-6100 |
| Fax: (212) 969-2900 | Fax:  (305) 967-6120 |
| | |
| -and- | By: /s Matthew I. Menchel |
| | Matthew I. Menchel, Esq. |
| 2255 Glades Road | Florida Bar No. 012043 |
| Suite 421 Atrium | Primary: matthew.menchel@kobrekim.com |
| Boca Raton, Florida 33431 | Secondary: waleska.moncada@kobrekim.com |
| Tel:  (561) 241-7400 | Andrew C. Lourie, Esq. |
| Fax:  (561) 241-7145 | Florida Bar No. 087772 |
| | Primary: andrew.lourie@kobrekim.com |
| By: /s Howard L. Ganz | John D. Couriel, Esq. |
| Howard L. Ganz, Esq. | Florida Bar No. 0831271 |
| (admitted *pro hac vice* No. 102417) | Primary: john.couriel@kobrekim.com |
| Primary: hganz@proskauer.com | Adriana Riviere-Badell, Esq. |
| Neil H. Abramson, Esq. | Florida Bar No. 030572 |
| (admitted *pro hac vice* No. 103823) | Primary: adriana.riviere-badell@kobrekim.com |
| Primary: nabramson@proskauer.com | Secondary: jagmeet.singh@kobrekim.com |
| Adam M. Lupion, Esq. | |
| (admitted *pro hac vice* No. 102419) | |
| Primary: alupion@proskauer.com | |
| Allan H. Weitzman, Esq. | |
| Florida Bar No. 0045860 | |
| Primary: aweitzman@proskauer.com | |
| Secondary: florida.labor@proskauer.com | |
| Jurate Schwartz, Esq. | |
| Florida Bar No. 0712094 | |
| Primary: jschwartz@proskauer.com | |

CASE NO.: 13-10479 CA 20

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 5th day of August, 2013, a true and correct copy of the foregoing was furnished via U.S. mail or e-mail to the following parties:

Michael W. Davey, Esq.
**Robert Allen Law**
1441 Brickell Ave., Suite 1400
Miami, Florida 33131-3426
Tel: (305) 372-3300
Fax: (305) 379-7018
E-mail: mdavey@robertallenlaw.com

*Counsel for **Defendant Ricardo Martinez***

Sean M. Ellsworth, Esq.
**Ellsworth Law Firm, PA**
420 Lincoln Road, Suite 601
Miami Beach, Florida 33139
Tel: (305) 535-2529
Fax: (305) 535-2881
E-mail: sean@ellslaw.com

Edward Swanson, Esq.
August Gugelmann, Esq.
**Swanson & McNamara LLP**
300 Montgomery Street, Suite 1100
San Francisco, CA 94104
Tel: (415) 477-3800
Fax: (415) 477-9010
E-mail: eswanson@swansonmcnamara.com
E-mail: agugelmann@swansonmcnamara.com

*Counsel for **Defendant Juan Carlos Nunez***

**Anthony P. Bosch**
1541 Zuleta Ave
Miami FL 33146-2317
Via U.S. mail

**Martin Beguiristain, PA**
12930 SW 128 St., Suite 103
Miami, FL 33186
Tel: (305) 251-2302
Fax: (305) 252-7392
E-mail: martinblaw@aol.com

*Counsel for **Defendants Biokem, LLC and Carlos Acevedo***

**BioGenesis of America, LLC**
c/o Registered Agent Ricardo Martinez
1111 Crandon Blvd, Apt B102
Key Biscayne, Florida 33149-2616
Via U.S. mail

/s Matthew I. Menchel
**KOBRE & KIM LLP**